**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**KELLY REMINGTON,**

*Plaintiff,*

*v.*

**CLARITY SERVICES, INC.,**

*Defendant.*

Case No: ____________________

**JURY TRIAL DEMANDED**

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, Kelly Remington ("Ms. Remington"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, Clarity Services, Inc. ("Clarity" or "Defendant"), stating as follows:

## PRELIMINARY STATEMENT

1. This is an action is brought by Ms. Remington against the Defendant for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA").

## JURISDICTION AND VENUE

2. Subject matter jurisdiction for Plaintiff's FCRA claims arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331, as the FCRA is a federal statute and the relevant transactions were committed within Flagler County.

**3.** The Defendants are subject to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat. and Fed. R. Civ. P. 4(k).

4. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2), because the acts complained of were committed and/ or caused by the Defendants in Flagler County which is within the Middle District of Florida.

## PARTIES

### Ms. Remington

5. Ms. Remington is a natural person residing in Bunnell, Flagler County, Florida.

6. Ms. Remington is a Consumer as defined by the FCRA, 15 U.S.C. § 1681a(c).

### Clarity

7. Clarity is a Delaware corporation, with a principal business address at 475 Anton Boulevard, Costa Mesa, CA 92626.

8. Clarity is registered to conduct business in the State of Florida, where its Registered Agent is CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.

9. Clarity is a Consumer Reporting Agency ("CRA") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

## FACTUAL ALLEGATIONS

### Clarity's Inaccurate Consumer Reports Regarding Ms. Remington

10. Around November 3, 2019, Clarity began maintaining a credit file on Ms. Remington.

11. Clarity, a CRA that predominantly serves the needs of online lenders making short-term loans, programs its systems to acquire and report as much information as possible, with little regard to the quality or accuracy of the data.

12. On or about August 10, 2026, Ms. Remington requested and obtained a copy of her consumer disclosure from Clarity.

13. Ms. Remington's review of the disclosure revealed that Clarity was reporting inaccurate, contradictory, and misleading information, as detailed below.

**Clarity Reports the Same Loan Twice**

14. Ms. Remington's disclosure revealed Clarity is reporting the same loan twice in Ms. Remington's file.

15. The disclosure contains a SmartPay Lease loan (account ending 4108, opened on November 3, 2019, in the original amount of $334) as two separate tradelines: Account #1, under the furnisher name "SmartPay Lease," and Account #2, under the furnisher name "SmartPay Lease."

16. The two tradelines are clearly and obviously the same loan: each displays the same account number ("XXX4108"), the same open date (November 3, 2019), the same original amount ($334), and the same number of payments (24, monthly).

17. Ms. Remington took out this loan exactly once.

18. Clarity did not need to conduct any investigation to discover the duplication.

19. Every datum needed to recognize the two entries as one loan – the account number, the open date, the amount, the payment schedule, and the identity of the furnisher that supplied each entry – was in Clarity's possession when it assembled the file.

20. Clarity assigns each of its data furnishers a subscriber identity and knows which furnisher supplied each tradeline; Clarity accordingly knew that both entries originated from the same lending relationship.

21. No procedure reasonably designed to assure maximum possible accuracy would permit a consumer reporting agency to publish the same loan twice under two variants of the same furnisher's name.

22. Ms. Remington's disclosure revealed Clarity is reporting the same loan twice in Ms. Remington's file.

23. The disclosure contains a SmartPay Lease loan (account ending 4108, opened on November 5, 2022, in the original amount of $1,182) as two separate tradelines: Account #3, under the furnisher name "SmartPay Lease," and Account #4, under the furnisher name "SmartPay Lease."

24. The two tradelines are clearly and obviously the same loan: each displays the same account number ("XXX4108"), the same open date (November 5, 2022), the same original amount ($1,182), and the same number of payments (24, monthly).

25. Ms. Remington took out this loan exactly once.

26. Clarity did not need to conduct any investigation to discover the duplication.

27. Every datum needed to recognize the two entries as one loan – the account number, the open date, the amount, the payment schedule, and the identity of the furnisher that supplied each entry – was in Clarity's possession when it assembled the file.

28. Clarity assigns each of its data furnishers a subscriber identity and knows which furnisher supplied each tradeline; Clarity accordingly knew that both entries originated from the same lending relationship.

29. No procedure reasonably designed to assure maximum possible accuracy would permit a consumer reporting agency to publish the same loan twice under two variants of the same furnisher's name.

30. Ms. Remington's disclosure revealed Clarity is reporting the same loan twice in Ms. Remington's file.

31. The disclosure contains a SmartPay Lease loan (account ending 4108, opened on

May 29, 2023, in the original amount of $1,182) as two separate tradelines: Account #5, under the furnisher name “SmartPay Lease,” and Account #6, under the furnisher name “SmartPay Lease.”

32. The two tradelines are clearly and obviously the same loan: each displays the same account number (“XXX4108”), the same open date (May 29, 2023), the same original amount ($1,182), and the same number of payments (24, monthly).

33. Ms. Remington took out this loan exactly once.

34. Clarity did not need to conduct any investigation to discover the duplication.

35. Every datum needed to recognize the two entries as one loan – the account number, the open date, the amount, the payment schedule, and the identity of the furnisher that supplied each entry – was in Clarity’s possession when it assembled the file.

36. Clarity assigns each of its data furnishers a subscriber identity and knows which furnisher supplied each tradeline; Clarity accordingly knew that both entries originated from the same lending relationship.

37. No procedure reasonably designed to assure maximum possible accuracy would permit a consumer reporting agency to publish the same loan twice under two variants of the same furnisher’s name.

38. Clarity sells its reports to short-term and subprime lenders that scrutinize precisely this kind of file. A duplicated derogatory tradeline overstates the number of accounts Ms. Remington has defaulted on and understates her creditworthiness, to her direct detriment each time Clarity sells a report about her.

39. Clarity’s consumer disclosure to Ms. Remington dated August 10, 2026 reports three Florida driver’s license entries – “XXXXXXXXX0598”, “XXXXXXXXX4903”, and “XXXXXXXXX0936” – each presented in heavily redacted form.

40. The FCRA requires a consumer reporting agency, upon a consumer's request, to "clearly and accurately disclose to the consumer … [a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1).

41. The statute permits a CRA to truncate a consumer's Social Security number in the disclosure on the consumer's request, 15 U.S.C. § 1681g(a)(1)(A), and separately governs the truncation of credit and debit card numbers on electronically printed receipts, 15 U.S.C. § 1681c(g). Nothing in the FCRA authorizes a consumer reporting agency to redact a driver's license number in a consumer's file disclosure.

42. Because Clarity has masked the majority of the characters in each entry, Ms. Remington cannot determine from the disclosure whether the license numbers Clarity is reporting reflect her actual Florida driver's license, transpositions or data-entry errors, stale or superseded license numbers, or license numbers belonging to a different consumer altogether.

43. The redaction does not aid the accuracy of the disclosure – it forecloses her ability to verify the underlying data at all. Clarity's decision to disclose the entries only in redacted form is itself the violation: Clarity did not "clearly and accurately disclose" the contents of her file as 15 U.S.C. § 1681g(a)(1) requires.

44. Clarity's consumer disclosure to Ms. Remington dated August 10, 2026 reports the account number on her SmartPay Lease tradeline as "XXX4108." Of the seven characters Clarity displays, it has masked three – leaving the final four digits visible to Ms. Remington.

45. The FCRA requires a consumer reporting agency, upon a consumer's request, to "clearly and accurately disclose to the consumer … [a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1).

46. The statute permits a CRA to truncate a consumer's Social Security number in the

disclosure on the consumer's request, 15 U.S.C. § 1681g(a)(1)(A), and separately governs the truncation of credit and debit card numbers on electronically printed receipts, 15 U.S.C. § 1681c(g).

47. Nothing in the FCRA authorizes a consumer reporting agency to redact a tradeline account number in a consumer's file disclosure.

48. Because Clarity has masked the account number, Ms. Remington cannot determine from the disclosure whether the account Clarity reports is in fact her account, whether the balance, status, and payment history Clarity attributes to that number are accurate, or whether the tradeline belongs to a different consumer altogether.

49. The redaction does not aid the accuracy of the disclosure – it forecloses her ability to verify the underlying data at all.

50. Clarity's decision to disclose the account only in redacted form is itself the violation: Clarity did not "clearly and accurately disclose" the contents of her file as 15 U.S.C. § 1681g(a)(1) requires.

51. Clarity's reporting of Ms. Remington's pay frequency is internally inconsistent. Clarity's file lists two different pay frequencies for Ms. Remington – "MONTHLY" and "WEEKLY" – even though a consumer is paid on only one schedule at any given time.

52. These pay schedules are mutually exclusive. A person paid weekly is not also paid monthly, and a person paid biweekly (every two weeks) is not also paid semimonthly (twice per month on fixed dates). Clarity's incorporation of contradictory pay-frequency data reflects an absence of data-quality controls and a failure to implement reasonable procedures to assure maximum possible accuracy of its consumer reports.

53. Clarity's phone data is further internally inconsistent: the number "386-XXX-

3220" appears simultaneously in multiple of Ms. Remington's phone columns – reported as both her personal phone and her work phone – which Clarity's own definitions treat as distinct categories of information.[1]

54. Clarity's consumer disclosure also contains an "Email Information" section, which the agency uses to associate online identifiers with Ms. Remington's credit file. That section reports four email addresses ("K…@YAHOO.COM", "K…@GMAIL.C", "K…@YAHOO.COM", and "K…@AOL.COM"; local part redacted by counsel).

55. Online identifiers of this kind function as identity keys: the subprime lenders to whom Clarity sells consumer reports, and Clarity's own record-matching logic, use them to associate a furnished record with a particular consumer.

56. An identifier that does not belong to the consumer is therefore not a harmless cosmetic entry – it is a vector for mismatching Ms. Remington's file with data that is not her own.

57. To the extent any identifier set out above does not belong to Ms. Remington, its inclusion in her consumer report is an inaccuracy that reasonable procedures designed to assure maximum possible accuracy under 15 U.S.C. § 1681e(b) would have prevented; and to the extent Clarity ingested and disclosed the identifier with no procedure to verify that it is her own, that failure is itself further evidence of the unreliable intake the foregoing paragraphs describe.

58. Clarity's file does not even reliably record Ms. Remington's name. Alongside the correct entry, "KELLY REMINGTON," the Name table of Clarity's own disclosure carries an entry reading "KELLYLYNN REMINGTON."

---

[1] In the paragraphs that follow, the middle three digits of each telephone number quoted from Clarity's file have been redacted by counsel to protect Ms. Remington's privacy and are shown as "XXX." The original disclosure Clarity generated and produced to Ms. Remington contained the full telephone numbers; Clarity retains a copy of that unredacted disclosure in its own records.

59. One of these entries is nonsensical on its face: “KELLYLYNN REMINGTON”, which pairs her given name with a “surname” Ms. Remington has never used. This entry belongs to Ms. Remington’s own file – indexed under her own inquiries and carried beside the correct entry – so it is not another person’s data commingled into the file, but her own record populated with a facially invalid value where her surname belongs.

60. Clarity’s own tracking numbers tie this entry to a April 22, 2026 credit application through Experian on behalf of Klarna Inc/WebBank – an inquiry in response to which Clarity furnished a consumer report. Clarity thus accepted the corrupted rendition as Ms. Remington’s identity without objection, sold a report keyed to it, and then retained the corruption in her file as though it were her name.

61. A surname field populated with a null placeholder, or with a verbatim copy of the consumer’s own first name, is not the output of any name-validity check; it is the signature of a system that stores and republishes whatever a furnisher transmits, however facially nonsensical. Catching this entry required no cross-reference to any other field and no outside data – only reading it.

62. That Clarity nonetheless carried this value in Ms. Remington’s file, sold reports keyed to it, and stood ready to match future inquiries against it demonstrates that, as to the identity data Clarity compiles and sells, anything goes.

63. No reasonable procedure designed to assure maximum possible accuracy of consumer reports, as required by 15 U.S.C. § 1681e(b), permits a consumer’s surname – half of the most basic identifier a file contains – to be reported as a placeholder or as a mere duplicate of the first name.

64. A prime example of Clarity’s disregard for accuracy is its current reporting of three

different dates of birth for Ms. Remington, each containing a different month, day, and year. A consumer can only have one date of birth; the additional dates Clarity has on file are necessarily false and inaccurate.

65. The harm to Ms. Remington from this reporting is severe. Date of birth is a core identity field, and Clarity's own proprietary credit scoring system – along with the underwriting models of the subprime lenders to whom Clarity sells consumer reports – treats inconsistencies in identity data as a primary red flag for fraud and identity theft.

66. A consumer file showing three different dates of birth is, by design, scored as a high-risk applicant whose identity cannot be reliably established. The result is materially lower credit scores, denials of credit, and credit offered only on substantially less favorable terms – consequences Ms. Remington suffered as a direct result of Clarity's reporting of false birth dates that no reasonable procedure designed to assure maximum possible accuracy of consumer reports would have permitted.

67. These identity failures do not merely coexist – they compound. As of the August 10, 2026 disclosure, Clarity's file simultaneously reported three different dates of birth and three distinct driver's-license numbers for a single consumer.

68. A person's name, date of birth, and government identification number are the fields an identity is made of. A file that cannot consistently state either her date of birth or her driver's-license number does not coherently describe any one human being – and every lender that purchases the file receives, and scores, that incoherence.

69. Each additional conflicting identifier deepens the fraud- and identity-risk signal that Clarity's own products attach to Ms. Remington, so the harms from these conflicts are not merely cumulative but mutually reinforcing.

70. The accumulation is also independently probative of Clarity's procedures. A single consumer file collects three different dates of birth and three distinct driver's-license numbers only where no identity-consistency check of any kind is applied at intake.

71. Not one of these conflicts required outside information to detect; each is visible on the face of Clarity's own tables. 15 U.S.C. § 1681e(b) does not tolerate one such failure, much less two at once, in the same file, sold to creditors as reliable.

72. The majority of lenders to whom Clarity sells reports thoroughly examine a consumer's employment history and income data to verify the consumer has a history of reliable employment and stable income.

73. Lenders to whom Clarity sells reports also rely on the identifying information in those reports – such as the consumer's name, date of birth, and address – both to confirm that the report describes the applicant and to assess the risk that an application is fraudulent or that the file has been mismatched to the wrong person. Clarity markets risk scores and fraud-detection products to those lenders.

74. A file carrying inconsistent or facially improbable identifying information tends to present the consumer as a higher fraud or identity risk and impairs the lender's ability to verify the consumer's identity during underwriting.

75. Consequently, Clarity's inclusion of demonstrably false information about Ms. Remington's consumer name, date of birth, loan tradelines, pay frequency, and phone-number information had a significant negative impact on Ms. Remington's ability to obtain new credit with favorable terms.

76. Each of the multiple reports sold by Clarity contained false information about Ms. Remington's consumer name, date of birth, loan tradelines, pay frequency, and phone-number

information and more.

77. The FCRA is clear in its requirement that Clarity, as a CRA, is required to prepare accurate reports:

> **Accuracy of Report.** Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. §1681e(b).

78. Clarity was required to follow reasonable procedures to assure maximum possible accuracy of the information concerning Ms. Remington.

79. Clarity was thus aware that when it sold reports on Ms. Remington that, under a best-case scenario, it was selling data and other information it knew it had gathered without regard to accuracy or completeness.

80. Additionally, when Ms. Remington requested her credit file disclosure from Clarity on August 10, 2026, Clarity provided Ms. Remington with only a redacted version of her credit file. Clarity redacted all but the last few digits of the three driver's licenses, as well as the account number of the credit account in the disclosure.

81. Nothing in the FCRA allowed Clarity to redact this information, but it did so anyway.

## <u>**Clarity Fails to Meaningfully Disclose Legally Required Information**</u>

82. As set forth above, on or about August 10, 2026, Ms. Remington requested a copy of her consumer credit disclosure from Clarity.

83. Upon receipt of Ms. Remington's request, Clarity was required to disclose all information "clearly and accurately" in the credit file, including the identity of each person who obtained a consumer report within the prior year. *See* 15 U.S.C. § 1681g(a)(3)(A)(ii).

84. The FCRA defines "Identification" as "the name of the person or, if applicable, the

trade name (written in full) under which such person conducts business." *See* 15 U.S.C. § 1681g(a)(3)(B)(i).

85. Frequently, Clarity fails to fulfill its legal obligations regarding disclosure of this data, often disclosing what can be fairly called incomprehensible information which virtually no one would comprehend.

86. For example, Clarity disclosed an inquiry from July 21, 2026 as "FEB/Personify - Prequal." Clarity disclosed this inquiry by listing "FEB" and "Personify - Prequal" together, separated only by a forward slash, without identifying which of these entities actually requested the report, what the relationship between them is, or whether either name even refers to an operating business as opposed to a software product, internal code, or unrelated process.

87. Clarity provided no address, phone number, website, email, or other contact information that would allow Ms. Remington to identify either entity or the role each played in obtaining her consumer report – information the FCRA expressly requires Clarity to disclose.

88. Clarity also disclosed an inquiry from July 21, 2026 as "FirstElectronicBank/OppLoans - PreQual." Clarity disclosed this inquiry by listing "FirstElectronicBank" and "OppLoans - PreQual" together, separated only by a forward slash, without identifying which of these entities actually requested the report, what the relationship between them is, or whether either name even refers to an operating business as opposed to a software product, internal code, or unrelated process.

89. Clarity provided no address, phone number, website, email, or other contact information that would allow Ms. Remington to identify either entity or the role each played in obtaining her consumer report – information the FCRA expressly requires Clarity to disclose.

90. Clarity disclosed these entities using abbreviations or shortened names that no

reasonable consumer would understand, and provided no address, phone number, or other identifying information.

91. Multiple consumers have previously sued Clarity for failing to disclose the names of entities obtaining credit reports as legally required.

92. The failure of a person to provide accurate and truthful information as required by law creates an injury-in-fact, thus creating standing pursuant to Article III. *See, e.g., Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982) (holding that alleged injury to a plaintiff's statutorily created right to truthful information was a cognizable injury in and of itself, regardless of whether the plaintiff actually intended to use the information for its primary purpose; therefore "the Art. III requirement of injury in fact [was] satisfied.").

93. Further, the lack of accurate, full disclosure of who had obtained her credit report caused Ms. Remington great frustration and emotional distress and made her concerned she was the victim of fraud or identity theft.

94. Clarity's incomplete disclosure of who accessed Ms. Remington's credit report and why caused Ms. Remington significant frustration, stress, and concern.

**Clarity's Lack of Standards Constitute Willful Violations of the FCRA**

95. Clarity operates in stark contrast to its parent company, Experian.

96. While Experian enforces Metro 2 guidelines – industry standards which contain hundreds of pages of explanation on how to report information, covering almost any conceivable scenario, and which is used by other large CRAs and serves as a lingua franca – Clarity requires no such compliance with Metro 2 guidelines and has no discernible quality-assurance standards.

97. In place of an industry-standard data-quality framework, Clarity's operative "standard" is to ingest and republish whatever data its furnishers transmit, without applying even

rudimentary validity checks. Clarity's file on Ms. Remington is the direct product of that approach: it incorporates and sells information that is not merely unverified, but facially impossible – information that no reasonable data-quality procedure could have permitted to enter a consumer report.

98. The inaccuracies in Ms. Remington's file are not isolated transcription errors traceable to a single furnisher.

99. They span multiple categories of the data Clarity reports – including consumer name, date of birth, loan tradelines, pay frequency, and phone-number information – and they share a common signature: each is the kind of error that a single, elementary validity check would have caught before the data was incorporated into Ms. Remington's file and sold to creditors.

100. Clarity instead operates a system designed to accept and resell that data as if it were genuine.

101. Clarity is not unaware that this is occurring. Clarity has been the subject of repeated FCRA litigation arising from the same categories of inaccuracy described in this complaint – multiple or facially impossible dates of birth on a single consumer's file, invalid driver's license entries, scrambled or mutilated renditions of the consumer's own name, and opaque or bundled inquiry disclosures.

102. Despite this notice, Clarity has continued to operate its systems in materially the same way, without implementing the basic validity checks that would have prevented the errors complained of here.

103. Clarity's decision to forgo the quality controls used by its parent company and by other major consumer reporting agencies, in the face of repeated notice that this decision causes ongoing harm to consumers, constitutes a reckless disregard for the rights of the consumers whose

data it sells, including those of Ms. Remington.

**Damages Suffered by Ms. Remington**

104. As a direct and proximate result of Clarity's inaccurate reporting, Ms. Remington applied for credit and was either denied outright or offered credit on materially less favorable terms than she would have received had Clarity's file accurately reflected her true creditworthiness. Lenders and creditors who purchased Clarity's consumer reports made adverse decisions based on the false, impossible, and internally contradictory information described herein.

105. The practical consequences of Clarity's inaccurate reporting are severe. A consumer whose file carries facially improbable or inconsistent identifying information and inconsistent income – as Clarity reported about Ms. Remington – is treated as a higher-risk borrower by the subprime lenders that Clarity primarily serves. This directly results in credit denials, higher interest rates, lower loan amounts, and more restrictive repayment terms, causing Ms. Remington concrete and measurable financial harm.

106. As a result of the Defendant's actions, Ms. Remington has suffered damages, including wasted time trying to figure out what the information in her Clarity file means and how it got there, lost financial opportunities, denial of credit, less favorable credit terms, lower credit scores, significant emotional distress and aggravation, and damage to her reputation.

107. As of the date of this filing, Clarity continues to include the aforementioned false information in Ms. Remington's credit file. As such, Ms. Remington demands that Clarity conduct an investigation upon service of this lawsuit and correct her file within 30 days.

108. Ms. Remington has hired the undersigned law firm to represent her in this matter and has assigned the firm her right to fees and costs.

**COUNT I**
**<u>CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)</u>**

109. Ms. Remington adopts and incorporates paragraphs 1 through 108 as if fully stated herein.

110. Clarity willfully violated 15 U.S.C. § 1681e(b) when it failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports sold regarding Ms. Remington, as Clarity sold consumer reports containing erroneous information about her consumer name, date of birth, loan tradelines, pay frequency, phone-number information, and more.

111. The duplication of her loan tradeline was apparent from the face of Clarity's own records: both tradelines displayed the same account number ("XXX4108"), the same open date (11/3/2019), and the same original amount ($334), and Clarity knew the identity of the furnisher that supplied each entry. Clarity nonetheless published both entries, presenting Ms. Remington as having defaulted on two separate loans when she had, at most, one such account.

112. Clarity has been sued on numerous occasions for very similar situations and knows that it frequently sells reports with erroneous information about consumers.

113. Clarity's conduct was thus willful or done with a reckless disregard for Ms. Remington's rights under the FCRA.

114. As a result of its conduct, Clarity is liable to Ms. Remington for the greater of Ms. Remington's actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

WHEREFORE, Ms. Remington respectfully requests this Honorable Court enter judgment against Clarity for:

a. the greater of Ms. Remington's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d. such other relief that this Court deems just and proper.

**COUNT II**
**CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)**
**(Pled in the Alternative to Count I)**

115. Ms. Remington adopts and incorporates paragraphs 1 through 108 as if fully stated herein, and pleads this count strictly in the alternative.

116. Clarity owed Ms. Remington a legal duty to utilize reasonable procedures to assure the maximum possible accuracy of its consumer reports regarding Ms. Remington.

117. Clarity violated 15 U.S.C. § 1681e(b) when it sold consumer reports containing erroneous information about Ms. Remington's consumer name, date of birth, loan tradelines, pay frequency, phone-number information, and more.

118. Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681e(b), and Ms. Remington is entitled to her actual damages, attorneys' fees, and costs, pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Ms. Remington respectfully requests this Honorable Court enter judgment against Clarity for:

a. actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c. such other relief that this Court deems just and proper.

**COUNT III**
**CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(1)**

119. Ms. Remington adopts and incorporates paragraphs 1 through 108 as if fully stated herein.

120. Clarity violated 15 U.S.C. § 1681g(a)(1) when it failed to clearly and accurately disclose all the information it had in its file by providing Ms. Remington with a redacted version of her Consumer Disclosure, including by redacting the account number on her SmartPay Lease tradeline while disclosing that tradeline's balance, status, and payment history.

121. Clarity has been notified through litigation that its disclosures to consumers fail to properly disclose this information.

122. Clarity's conduct was thus willful and intentional, or, alternatively, was performed with reckless disregard for its duties under the FCRA.

123. As a result of its conduct, Clarity is liable to Ms. Remington for the greater of Ms. Remington's actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

WHEREFORE, Ms. Remington respectfully requests this Honorable Court enter judgment against Clarity for:

a. the greater of Ms. Remington's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d. such other relief that this Court deems just and proper.

**COUNT IV**
**<u>CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(1)</u>**
**(Pled in the Alternative to Count III)**

124. Ms. Remington adopts and incorporates paragraphs 1 through 108 as if fully stated herein, and pleads this count strictly in the alternative.

125. Clarity owed Ms. Remington a legal duty to accurately disclose all the information

in her credit file upon her request.

126. Clarity breached this duty when it provided Ms. Remington with a redacted version of her Consumer Disclosure, including by redacting the account number on her SmartPay Lease tradeline while disclosing that tradeline's balance, status, and payment history.

127. Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681g(a)(1), and Ms. Remington is entitled to her actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Ms. Remington respectfully requests this Honorable Court enter judgment against Clarity for:

a. actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c. such other relief that this Court deems just and proper.

**COUNT V**
**CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(3)(A)(ii)**

128. Ms. Remington adopts and incorporates paragraphs 1 through 108 as if fully stated herein.

129. Clarity violated 15 U.S.C. § 1681g(a)(3)(A)(ii) when it failed to identify each person, including the end-user, that procured Ms. Remington's consumer report during the one-year period preceding the date upon which she made the request.

130. Clarity is aware that its consumer disclosures fail to properly identify end-users via multiple consumer lawsuits.

131. Clarity's conduct was willful, intentional, and exhibited a reckless disregard for its duties to provide clear and accurate disclosures.

132. As a consequence, Clarity is liable to Ms. Remington for the greater of Ms.

Remington's actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, and reasonable attorneys' fees and costs, pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Ms. Remington respectfully requests this Honorable Court enter judgment against Clarity for:

a. the greater of Ms. Remington's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d. such other relief that this Court deems just and proper.

**COUNT VI**
**CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(3)(A)(ii)**
**(Pled in the Alternative to Count V)**

133. Ms. Remington adopts and incorporates paragraphs 1 through 108 as if fully stated herein, and pleads this count strictly in the alternative.

134. Clarity owed Ms. Remington a legal duty to disclose the identity of each user that obtained her consumer report within one year of Ms. Remington's request.

135. Clarity breached this duty when it failed to identify each person, including end-users, who procured Ms. Remington's consumer report.

136. Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681g(a)(3)(A)(ii), and Ms. Remington is entitled to her actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Ms. Remington respectfully requests this Honorable Court enter judgment against Clarity for:

a. actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c. such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted on August 19, 2026, by:

**SERAPH LEGAL, P. A.**

***/s/ Christian E. Cok***
Christian E. Cok, Esq.
Florida Bar No.: 1032167
CCok@seraphlegal.com
Service@seraphlegal.com
3505 E. Frontage Rd., Suite 145
Tampa, FL 33607
Tel: 813-567-1230
Fax: 855-500-0705
*Attorneys for Plaintiff*